Decided  November  8,  1988

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | |
|---|---|
| ROSE V. WACANGAN, )<br>   Plaintiff/Appellant, )<br>   v. )<br>ANTONIO A. ARRIOLA, )<br>   Defendant/Appellee. ) | DCA NO. 87-9016<br>CTC NO. 87-89<br><br>OPINION |

Attorney for Plaintiff/Appellant:  REYNALDO O. YANA, Esq.
                Attorney at Law
                Susupe Village
                P.O. Box 52
                Saipan, MP  96950
                Telephone:  (670) 234-6529

Attorney for Defendant/Appellee:  PEDRO M. ATALIG, Esq.
                Attorney at Law
                Garapan Village
                P.O. Box 332 CHRB
                Saipan, MP  96950
                Telephone: . (670) 234-3656

Before:  LAURETA, and KING*, District Judges, and HEFNER**, Judge.

---

\*   The Honorable Samuel P. King, Senior U.S. District Judge for
the District of Hawaii, sitting by designation.

\*\*  The Honorable Robert A. Hefner, Chief Judge, Commonwealth Trial
Court, sitting by designation.

LAURETA, Judge:

## PROCEDURAL HISTORY

Appellant Wacangan filed a complaint with the CNMI Department of Labor and Commerce on August 13, 1985, alleging that appellee Arriola owed her for unpaid regular and overtime wages for work done by her at appellee's store. On January 20, 1987, the hearings officer awarded Wacangan $547.72 on her claim, plus attorney's fees allowed by statute, and ordered appellee to provide one-way airfare to the Philippines for appellant. Appellant nevertheless appealed to the trial court arguing that her job in the store was covered by the Minimum Wage Law and that since she prevailed at the hearing she was entitled to reasonable attorney's fees pursuant to 4 Commonwealth Code (CMC) § 9244(b) and 3 CMC § 4447(d). Appellee did not cross-appeal.

On July 7, 1987, the trial court remanded to Commerce and Labor with instructions to dismiss for lack of jurisdiction and failure to state a cause of action.

Notice of appeal was timely filed on August 5, 1987.

## FACTS

Appellant is a Filipino national who came to the CNMI under work and entry permits for employment by Maria Matagolai. She arrived June 8, 1985. Ms. Matagolai at all times has cohabited with appellee Antonio Arriola, living as husband and wife. Ms. Matagolai was not, and is not, a party.

Under appellant's employment contract she was to work

**558**

for Ms. Matagolai as a domestic helper and receive $150.00 per month. In fact, she ended up working long hours, including half-days on Sundays, in Mr. Arriola's store. Appellant petitioned the Department of Commerce and Labor for back wages and overtime.

The administrative hearings officer ruled that appellant, technically hired as a live-in maid, was not entitled to the protection afforded by the minimum wage law, P.L. No. 1-20. However, he did award her 72.125 cents per hour for each of the 391.5 hours he determined were in excess of the contract hours. He also awarded liquidated damages in an amount equal to the back pay, for a total award of $546.72. Finally, he directed appellee to pay attorney's fees as per 3 CMC § 4447(d) and to provide appellant one-way airfare to the Philippines. Petitioner-appellant appealed to the trial court.

Subsequently, the trial court held that the Division of Labor lacked jurisdiction because appellant's complaint was not against her legal employer, Ms. Matagolai, but against her employer's "husband". The matter was remanded to the Director, Department of Commerce and Labor, with instructions to dismiss for lack of jurisdiction and failure to state a cause of action. This appeal followed.

### ISSUE

1. Does the CNMI Department of Commerce and Labor have jurisdiction over a dispute between a nonresident alien worker and a de facto employer, or only disputes between a nonresident worker and the employer with whom the worker actually has a contract?

559

DECISION

At the outset, it is noted that the parties argued, and both the Chief of the Division of Labor and the trial court decided, this dispute using the CNMI's new Nonresident Workers law, and not the previous law, which was still in effect when this dispute arose. Generally, unless a manifest injustice would result, a reviewing court applies the law as it exists at the time of its decision. See, e.g., In re Rubin, 769 F.2d 611, 614 (9th Cir. 1985), citing Bradley v. Richmond School Board, 94 S.Ct. 2006, 2016 (1974). This Court adopts that principle here, particularly since the new law has been used at every step of this proceeding.

On appeal from the administrative decision of the Division of Labor, the trial court remanded with instructions to dismiss. The court reasoned that the Division of Labor lacked jurisdiction because appellant's complaint was not against her legal employer, Ms. Matagolai, but against her "husband", appellee. The court rejected appellant's contention that the Division of Labor has jurisdiction of a dispute between a nonresident worker and a de facto employer. The court also concluded that appellant had no cause of action against appellee based upon the minimum wage and hour act because she was not an "employee" within the meaning of 4 CMC § 9212(d).

The CNMI's new Nonresident Workers Act is found in 3 CMC § 4411 et seq. The Legislature vested broad authority in the Chief of the Division of Labor to handle the entire spectrum of affairs involving nonresident workers. 3 CMC § 4421 provides, in part,

that the Chief shall:

      (c) Oversee, monitor, and review the use of nonresident workers and all matters related to such use, including the health, safety, meals, lodging, salaries, and working hours and conditions of such workers, and the specific contractural provisions for the services or labor of such workers.

      (d) Enforce, pursuant to Sections 4441-4446, the provisions of this Chapter and any agreement which the Chief enters into with any employer concerning the employment of nonresident workers.

      (e) Require that employers accept such agreement or conditions for the payment of wages or benefits to nonresident workers, or any other agreement or contract provision, as the Chief determines to be necessary and consistent with the policy and purposes of this Chapter, and any such agreement, condition, or provision shall be legally enforceable in the courts of the Commonwealth.

      (f) Establish occupational categories, minimum standards of qualification, and procedures for certification of nonresident workers.

Under 3 CMC § 4441, the Chief of the Division of Labor is given the responsibility for conducting such investigations as he or she "may deem appropriate and necessary to enforce this chapter, rules or regulations promulgated hereunder, or agreements or contracts entered pursuant hereto, or any injury to a nonresident worker, or working conditions, or employer-provided housing conditions...."

Section 4444 provides for issuance of warnings or administrative hearings. Hearings are to be conducted pursuant to 1 CMC §§ 9109 and 9110. The Chief is also authorized to cancel or

561

prohibited from doing work of a different classification than specified in the original employment contract.

The Chief of Labor is required by law to oversee, monitor, and review all matters related to the use of nonresident workers. 3 CMC § 4421(c). The Division can deport nonresident workers who have left their employment, 3 CMC § 4434(g), or modify a contract to allow employment by a different employer, 3 CMC § 4444(e). An employer who has not complied with the employment agreement with the Division or the employment contract with the nonresident worker can be disqualified from further use of nonresident labor. 3 CMC § 4437(d)(3). Any person who fails to comply with the Nonresident Workers Act is subject to civil penalties of up to $500 per day. 3 CMC § 4447(c). Even more severe penalties can be imposed against any person who violates any provision of the law, or any regulation or order issued thereunder, or who makes any false statement during the course of an investigation. 3 CMC § 4447(e).

The Nonresident Workers Act does not by its terms prohibit a nonresident worker from pursuing a grievance against a de facto employer. Of course, a nonresident worker who complains is immediately subject to deportation. 3 CMC § 4434. Here, however, the worker did not "leave" her employment; rather, it appears she was required by her legal employer to work for appellee. Under 3 CMC § 443(b), appellant is faultless because "any period of time during which the worker is required to be present at any location within the Commonwealth by...her employer

562

shall be considered working hours...." At the very least, the appellant has less culpability than either appellee or Ms. Matagolai.

Given the extremely broad grant of power given to the Division of Labor it is clear that the Division did have jurisdiction over this dispute. Further, the Chief has much discretion, which he appears to have tried to use wisely here, to fashion a remedy appropriate to each situation. The trial court's ruling is too restrictive and punishes only the person who was arguably the least culpable.

This matter is remanded to the trial court, with instructions to remand to the Division of Labor for more complete fact-finding, investigation of all claims, and, if found appropriate, imposition of penalties on those found to be in violation of the law. The Division's ability to fashion an equitable remedy, as provided in the law, is reiterated.

_____
Alfred Laureta
Judge

_____
Samuel P. King
Judge

_____
Robert A. Hefner
Judge